We'll now turn to 23-3091 Johnson v. Smith. I don't think there's any need for security at this point. I assume they were all here to hear Johnson v. Smith, but I guess not. Mr. McRoberts, you may proceed. May it please the court, I'm Sam McRoberts for the plaintiffs opponents in this matter. The district court should be reversed. The government's surprise warrantless searches of the Johnson White homestead in the business records violate the Fourth Amendment to the United States Constitution. This case should be an easy one under the pervasively regulated industry framework set forth in City of Los Angeles v. Patel. At top, Patel made clear, this is an incredibly narrow exception which cannot be permitted to swallow the rule. But if training a hunting dog from a rural homestead in Cowley County, Kansas is a pervasively regulated industry for which the Fourth Amendment's warrant requirement does not apply, then practically every regulated business in Kansas is also pervasively regulated. I mean, you agree it is subject to a statute? Dog training and handling is subject to a statute. Yeah. And that statute has a certain regulatory scheme built into it? It does. Okay. So, I mean, it is a, I guess the question is, is whether it is a pervasively regulated industry for lack of a better term? That's exactly the heart of this case. And Patel sets forth the framework for whether or not a business can be considered pervasively regulated. And going to Your Honor's questions about whether or not there's regulation, in Patel, hotels had been regulated for, since the 1780s, almost 220 years more than this inspection regime. And in Patel, the court said that was not enough to turn hotels into a pervasively regulated industry. Anything corresponding to the same sort of inspection regime and notice that there would be inspections in Patel and hotels? Weren't they just trying to get receipts? Who'd stayed there? It was more than receipts. It was basically a law book. And so, in Patel, what was happening was the city would come in and ask to see the, basically, a registrar who had been there. Investigating crimes? Well, that was part of it. It was also, in theory, the government was advancing that it would help prevent crimes. So not exactly investigating crimes themselves, because as all pervasively regulated cases say, if it's used for a criminal purpose, if these surprise warrantless searches are for a criminal purpose, then the pervasively regulated exception cannot apply. Are you saying that the Kansas legislature overstepped or not? They did overstep in multiple ways, and so did the administrative agency that imposed these regulations. What's important under Patel is that it set forth limiting principles. So after Berger, what happened was this pervasively regulated industry exception became the rule. Circuits and trial courts started holding that all sorts of businesses were pervasively regulated, and therefore could be searched without a warrant. Patel set forth some limiting principles, that in order for a business to be considered pervasively regulated, it wasn't just enough that there were regulations. It had to be public welfare concerns, or raise serious or urgent risks of criminal activity. Hotels, even though sometimes people can use them for criminal activities, was not enough to turn it into a pervasively regulated industry. The same thing here. At 1286, on these facts, before the district court, there is nothing at all that would indicate that training and handling a hunting dog in Collard County, Kansas, is intrinsically dangerous, that it raises... You've touched on the issue that concerns me. You think this is an easy case. I think it's an impossible case. We could not find a single case involving whether something is pervasively regulated, and therefore searches are admitted. That was decided on the pleadings. You need a factual development in this case. If they have evidence that there's a real problem with kennels like this, they need to put it on. You need to put on your arguments about the facts. We don't have anything to plead. Do you know of any case in this area that's been decided on the pleadings? So first, I would say that yes, I agree with the court that this is an inherently facts-based question, which is why we think it's an easy one. The district court erred by dismissing our case. If the government has evidence that training and handling hunting dogs is inherently dangerous, they do need to put on the evidence. Did you allege that it wasn't? Yes. Did they contest that? No. Okay. And going back to your Honor's question, Patel was actually decided on 1286. It was? Yes. They had a lot of history there. That was presented, I think, by amicus. But what I think was really important is the court looked there and said that it wasn't inherently dangerous, just by doing a comparative analysis to the other industries that had been deemed pervasively regulated. And so going back to your Honor's question, that's why we think this is an easy case. We alleged that this is not intrinsically dangerous, that it does not pose an inherent risk to the public welfare, that it does not raise an urgent or serious risk of criminal activity. We put all of that in the complaint. And by dismissing our case, the district court ignored 1286. The government has not advanced any argument still to this day that training and handling hunting dogs is intrinsically dangerous at all. And so for those reasons, this cannot be considered a pervasively regulated industry on these facts at this stage of the case. Are you saying that we should say that the rule that the Kansas statute is unconstitutional? Yes. OK. And as far as the most recent part of your argument on inherent dangerousness, you're treating that like it's a pillar. But in fact, in Patel, where that even came up, was a footnote responding to Justice Scalia's other opinion. And it's not like every court has treated inherent dangerousness like it, in fact, is a pillar. So what if we don't think that it is? Even if this court does not take the view that it is a pillar, it is still an important factor to be considered when determining whether or not a business is considered pervasively regulated. The government, in this case, now for the first time on appeal, says that dangerousness is a factor. That was in footnote 15 of their brief. So even if the court does not accept our view that it is an outcome determinative factor, it is still an important one that the district court did not consider at all, and the government never raised that issue below. Who does the dangerousness have to flow to? In this case, it seems like the regulations in the statute are aimed at protecting the dogs. And in the other examples, it seems like the danger is to protect the public from people from danger. We think the best way to view dangerousness is whether or not the public is protected. That is the import, I think, of Patel in the other cases as well. Mexican gold fishing out of the Fifth Circuit did address dangerousness and also said that it was a factor to be considered. And that just came out in 2023. Another factor that's critically important in this case is whether or not the industry was subjected to warrantless searches at or near the time of the founding. Hotels, again, had been regulated since the 1780s, but what was important in that case was that even though they were regulated, there was no evidence that they were searched without a warrant at or near the time of the founding. In this case, there's no evidence that dog trainers and handlers  So for all of those factors, it shows that the district court committed reversible error by dismissing our case. Even if, though, this court were to hold that dog training and handling is a pervasively regulated industry, which we don't think this court should do, but even if it did, the inspection regime still violates all three of the Berger prongs. In other words, the exception cannot apply unless then you go into the Berger three-prong analysis. I'm not going to address Berger prong one. We briefed it. I think the part of our case, if the court were to find it's pervasively regulated, turns on Berger's prong two and three. In this case, there is no evidentiary support at all in the record that would suggest that warrantless searches are necessary. That's the verbiage from Berger. Warrantless searches must be necessary. The district court misstated and misapplied that test. There are several reasons why warrantless searches of the Johnson-Coyett homestead are not necessary. First, the legislature's language itself undercuts this entire necessity argument. Under 47-1709b, once a person is licensed, the government may inspect. It doesn't say that the government shall inspect. It says may. By virtue of using that word, it undercuts the necessity argument. Same with the legislature's use of an administrative search warrant process. If an individual refuses to allow search, the government is able to secure an administrative warrant under 1709k. Because there is an administrative warrant, the legislature has made it clear that warrantless searches are not necessary. There's also nothing in the facts that suggests that warrantless searches are necessary. And what's critically important is that Mr. Johnson is operating under a veterinary care plan. He's also inspected by a veterinarian at least once a year. So for all of those reasons, warrantless searches are not necessary. We also pleaded in our complaint that the parts about whether or not an animal is being mistreated, things like that, cannot be quickly remedied. So if the government did have to go get an administrative warrant and it took 15 minutes or 30 minutes, that cannot be quickly fixed. So the government cannot establish, at least on these facts, at this stage that warrantless searches are necessary. So for those reasons, they cannot satisfy Burger Prong 2. But the government cannot satisfy Burger Prong 3 as well. There again, the district court misstated and misapplied that standard. What's important about Burger Prong 3 is that it limits and constrains the inspector's ability. It has to provide, the regime has to provide a constitutionally adequate substitute for a warrant. It has to say when and where and how often the inspector can conduct these warrantless inspections. But in this case, the way that the regime is set up, it does not constrain inspector discretion. They are able to search 10 times a day, every day for that inspection period. So there is an administrative regulation that sets up windows, a nine-month window for the best performing individuals like Scott Johnson. Even under that regime, a best performing individual like Scott could be searched more often than a lesser performing schedule because there's an overlap between the windows. But more importantly, during that window period, it does not say that inspector can only do it one time or only two times. It says they can go during that nine-month period. So that does not sufficiently constrain the inspector, even during that window period. But here's where it even gets worse. According to the government's handbook, they don't even have to follow the administrative regulation. If they want to, they can decide when and how often to search a regulated business. All they have to do is ask their supervisor and that would allow them to search every single day for as long as they want to. All this is alleged in the complaint? We have alleged that the inspection, yes, we have alleged that it violates burger promissory, that it is not sufficient. Have you explained what the manual says? Is that in your complaint? We attach the manual to the complaint as an exhibit. We have referenced portions of the manual in our complaint as well as our briefing and at pages 83 and 90 of the record, that goes to the inspector being able to decide when and how often they search and whether or not they can go outside of that administrative regulation. So for all of those reasons, this warrantless search violates the Fourth Amendment under the pervasively regulated industry framework set forth in Patel. If there are no further questions, I would like to reserve the balance of my time. Thank you. May it please the court. My name is Curtis Warren and I represent Justice Smith, the Kansas Federal Health Commissioner. I'll go straight to Patel because that seems to be the heart of the case here. The Supreme Court did not overrule or fundamentally alter the closely that the appellants rely upon illustrates that the court was simply comparing the facts of the case to its prior decisions. And that's what the 5th, 6th, 7th, and 9th circuits have all said reading that passage. I think more to the point, the 5th circuit made an excellent point when it said that there's no historical or textual reason why the Fourth Amendment distinguishes between industries that are inherently dangerous and those that are not. In addition, Patel is distinguishable because, as the court explained there, a hodgepodge of regulations was not enough to create a comprehensive scheme that put the licensees on notice that they would be subject to periodic inspections. As we laid out in the brief, the Kansas Pet Animal Act provides a comprehensive scheme that makes licensees aware that they will be subject to routine inspections at particular intervals with enough discretion for the investigators to go within these nine-month windows to make sure that they have some element of surprise, but at the same time provide the licensees an opportunity to know roughly when they'll be inspected. You're saying that notice was given by this specific statute. Would there have been any reason to think that before the statute was enacted? I'm seeing whether the state can bootstrap itself, essentially saying we can closely regulate this industry and have warrantless inspections, etc., because we say so in this statute, so you're on notice. Was there any notice before this statute? Prior to the session, I don't know. The nine-month windows are actually in the regulations promulgated by the commissioner. On your bootstrapping point, though, they make that point several times that you can't simply regulate a business into being closely regulated and therefore be subject to the Fourth Amendment. That makes some sense, doesn't it? Because otherwise, it has no teeth to say it has to be a closely regulated business. We decide we're going to make it a closely regulated business in search. You seem to acknowledge that that's an issue. Of course, yeah, and the Supreme Court has noted this. The Berger Standard is what protects businesses from that bootstrapping. Even if a business is closely regulated, that's only the first step in the analysis. You still have to have a substantial state interest. The inspections must be necessary to Okay, so how do we get around the absence of evidence supporting the government's position here? If we're deciding this on a 12b-6, we have allegations that those requirements are not satisfied. You may have great evidence to support it, but how can we have nothing to look at? Well, two parts to that. First is that it's common sense that people I think that's common sense. Our citations in the brief to stories illustrating this, they're totally extreme. They're just for illustration purposes. They're not meant to play a back angle, but if you want specific... Well, let me examine that common sense. That makes sense for breeders who are going to sell the dogs. Maybe they are pretty sloppy with their care of the dogs because they just need the ones that survive to do that. Here, the owner is keeping dogs that somebody else owns. Those people are not going to turn over their dogs for this care if they have concerns about it and they're checking on it. So you have an inherent interest of the owners of the dogs in these kennels treating the dogs properly, which is not true if it's a breeder-seller operation. So why is it common sense to think that someone who runs this type of kennel is going to abuse the dogs and think it's going to stay in business for any length of time? I mean, as they explain in the complaint that they hold dogs at their facility for weeks, months, years on end, sometimes the dogs spend their entire lives in their care. I don't know how often they're checking in on them. The regulations that are promulgated... Okay, go ahead. So the regulations that are promulgated are not concerned about dog training or specific to that industry. They're concerned about the welfare of the animals because they're staying there overnight. They're at the complete mercy. Yeah. So don't you need evidence, though, that there's a problem with this sort of... You have some arguments that they mistreated. I have questions about that, but evidence could convince a court one way or the other. Don't you need to put on that evidence? Well, I think if this court really presses for evidence, there is testimony before the Senate Agriculture and Natural Resources Committee on March 8th. Is this in the pleading? Is this in the complaint? I don't think it was in the complaint. So how can we consider that? Well, legislative history, I think for the relevant, the law can be considered by the court. It's easily accessible as any legal research, right? So it's stuff we take judicial notice of? I suppose so, Your Honor. I'm not sure we... Well, that's an interesting question. That's an interesting question. But there was testimony at that hearing of certain individuals that were concerned about the fact that under the prior regime, prior to 2018... This testimony... I'm sorry, I'm delaying your question quite a bit. He's going to keep you so long, I'm going to forget what my question is. Well, write it down now. Was this testimony related to this type of kennel? I don't know if it was particular to this type of kennel. There were certain private individuals who were concerned about licensees receiving particular notice. And I apologize, I meant to include this in my brief, but it fell off of my checklist. So I am sorry about that. But there is testimony about licensees receiving prior notice of routine inspections and being able to... So people were able to effectively clean up their act before they entered into... Before they were inspected. Okay, so here's my question. Is this basically a case of first impression as having the harm being protected against by the statutory regime being one that goes to the protection of animals as opposed to going toward the protection of the public? As far as a case of first impression in that regard, I don't necessarily think so. I mean, this court did in Big Cats address a wild animal exhibitor. And this court said that it was closely regulated by the Animal Welfare Act. I think that case is actually pretty instructive here. It didn't... In that case, Patel was referenced in the briefing. And in fact, the decision was issued a year and a half after the court's decision in Patel. Surely, if this court thought that the Supreme Court had significantly narrowed the closely regulated business exception, it would have said so, but it didn't. Right. Yeah, the Big Cats case, I mean, that's probably not a great case for fleshing out this distinction because if I'm keeping tigers at my house and they get out, they can really be very dangerous. The same is probably not the same for dogs. And especially when you've got a statute that doesn't purport to be making sure you're keeping dangerous animals caged up in a proper manner or something. Well, I might push back a little bit on that because actually, I believe the facts in Big Cats, the federal inspectors were at the facility because they believed a tiger cub was in danger. Tiger cub's health itself was in danger. So in the same way, we're concerned about the health and welfare of the animals here, just as the federal inspectors are. Do you have any authority for the idea that around the time of founding, that the founders would have looked at the Fourth Amendment or the original public meaning where at the time the Fourth Amendment would be construed to be allowing searches for the protection of animals' welfare? Yeah, actually, the U.S. Supreme Court already rejected this argument in Donovan v. Dewey. In that case, if you recall, that dealt with the surface mining regulations that had only been in effect for about 15 years. The court said that while the duration of the regulation will often be an important factor, the pervasiveness and regularity will ultimately carry the most weight. Court said that if history was the sole criteria, it would lead to absurd results because Congress and the states wouldn't be able to respond to emerging technologies. The example they gave there was- Okay, so I guess what your answer is, is you don't have any authority contesting what I said or going against what I said, but it doesn't matter because the Supreme Court's rejected that as a ground. I suppose that's- Okay, fair enough. Yeah, yeah. There, they said the nuclear power industry, if it was limited to only businesses that were around at the time of the founding, obviously, nuclear power could be. And I think more specific to this circuit, this circuit and many other circuits of health, that the commercial trucking industry is closely regulated, obviously, not around at the time of the founding. I mean, what's not, I guess one of the problems I have is what's not pervasively regulated sort of under your argument. I mean, we've got courts, maybe not from your jurisdiction, but barbers have been found to be pervasively regulated. Restaurants, obviously, they attempted it with hotel, the argument with hotels and failed. I mean, it seems like anytime you want to legislate in the field, the argument can be made that there's going to be pervasive regulation. Yeah. Again, this goes back to my point that the Berger standard really guards this doctrine from abuse. And that's where you still have to have a substantial state interest. You can't just simply regulate a business into this exception. How do you show that substantial state interest? That's what I'm curious about here. I mean, it's a factual matter. It is a factual matter. Where do you see the substantial state interest incorporated into the complaint? I believe, I mean, my understanding is that courts all the time consider state interests on their face if there's legal arguments. I don't believe we have to put on facts to make an argument. But the state has a substantial interest in protecting the health and welfare of animals, Your Honor. Well, don't you have to show that this sort of regulation is necessary to advance that interest? That is one of the problems. If it turns out, for example, that factually these kennels just don't present problems, then how do you justify the statute? Again, Your Honor, I'd return to my prior answer that I think it's common sense that people mistreat animals who are kenneled for weeks, months, and years on end. Let me ask the question I asked the other side. I asked if there were any cases that decided an issue of this sort on the pleadings. And he gave one example to tell where the court threw it out. Do you know anywhere this type of regulation has been affirmed by the court on the pleadings? I don't know of any because I haven't looked through the cases to see the specific procedural posture. But then bringing up Patel, I think he's a good point. As you mentioned earlier, Your Honor, there was a lot of history in that case. The court considered the long history of the hotel industry. And if it was, I'm assuming he's correct in saying that it was decided on a 1286 motion, I think that's proof that this court can go forward with a legislative history of the bill, a substantial state interest, and an analysis of the Pet Handle Act. And one last thing I wanted to mention too on Patel going to Judge Phillips' earlier question. I think another distinguishing factor there was that that regulation gave police officers the direct ability to go into a hotel and look at the registry. Here we're dealing with animal facility inspectors who are not law enforcement officers. They're only charged with enforcing the act. I have nothing further. I would ask that you please affirm the district court. Thank you, counsel. Thank you. One quick point. Big Cats is not instructive because the parties in that case agreed that it was pervasively regulated. In this case, we're disputing that dog training and handling is pervasively regulated. So Big Cats isn't instructive in this case. And then going to the historical analysis, in Patel, it made clear that it wasn't the duration of regulation that mattered. Because again, hotels have been regulated since the 1780s. What mattered was that hotels were not warrantlessly searched at or near the time of the founding. And in cases from the Supreme Court since Patel, the Supreme Court has made clear what was important when considering exceptions to the Fourth Amendment, or whether or not they existed at or near the time of the founding. Like in Camellia, in the community care taking exception, and Lange in the fleeing misdemeanor exception. So for all of those reasons, and because dog training and handling was not subjected to warrantless searches at or near the time of the founding, the exception does not apply here. The Kansas legislature obviously felt there was a need, that animals needed to be protected in this fashion. Pass the law, which isn't that easy to do. What do you say are the limits to what the Kansas legislature could do with its concern? I think your Honor's question goes to the heart of whether or not the legislature can regulate a business or an industry. And we're not here challenging the legislature's ability to require a license for Scott Johnson to train and handle dogs. The limits, the legislature can't legislate away the Fourth Amendment's requirements. So the limits to what they can do are set forth in cases like Patel. They cannot just legislate away the Fourth Amendment. And so the limits are set forth. There are certain limiting principles that inspectors can't just go onto somebody's property. So to answer the question as far as what can Kansas allow, it's concerned that dogs are being treated poorly in kennels, whether trained or whether housed for vacations or whatever else. What can it do? Does it have to have a complaint from a citizen saying, we heard dogs yelping and we saw ribs sticking out and so forth? And then it goes to a court and gets a search warrant based on a violation of animal cruelty statute? Is that the limit? I don't think that that would be the limit. So if I understand the court's question, that wouldn't be the only example where they could conduct a search. I think that the limiting principles are set forth in Camerota and See and Patel. And so the government can conduct searches. I think they have the ability to do that, but that is circumscribed by the warrant requirements. So at default, the rule is if you're going to search a home or a homestead like here, you need to have a traditional search warrant. But even if that's not the case, when it is a routine inspection, like how it's been And there is an administrative warrant search process based in by the legislature. What do you say to the use of legislative history to provide the factual support for the need for this type of search without a warrant? I think it's improper. And I think it's improper just as the government has done in this case to cite newspaper articles. Newspaper articles. Yeah. But what about testimony at a legislative hearing? I don't believe that the government can use legislative testimony at a hearing, especially because it's unclear so far that has anything to do with training and handling hunting dogs. That has anything to do with this case. And if they wanted to raise it, they should have done it in their 12B6 motion or in their responsive brief. And they have not done that. Thank you. Case submitted. Counselor excused. Thank you.